DEWEY KEITH MAYBERRY, PLAINTIFF v. ALICE THOMPSON ALLRED, DEFENDANT.

(Filed 24 February, 1965.)

**1. Automobiles § 41g—**

Plaintiff's evidence tending to show that he turned on his left turn signal and attempted to make a left turn at an intersection after ascertaining that no vehicle was approaching from the opposite direction within the line of his vision of 150 feet, and that defendant's vehicle, approaching the intersection from the opposite direction, struck his vehicle when all but four feet of his vehicle had cleared the intersection, *held* sufficient to be submitted to the jury on the issue of defendant's negligence upon the hypothesis that defendant failed to delay her entry into the intersection when plaintiff's vehicle was already in the intersection. G.S. 20-155(b).

**2. Automobiles §§ 37, 39—**

This action involved a collision between plaintiff's lightweight compact and defendant's car weighing approximately twice as much. Physical facts

at the accident disclosed that defendant's car stopped at the point of impact with no skid marks behind it, while the compact, which was hit broadside, was turned around and knocked some 4 to 5 feet. *Held:* The physical facts belie plaintiff's testimony that the speed of defendant's vehicle was some 50 mph, and makes such testimony without probative force.

**3. Automobiles § 42h—**

Evidence permitting the inference that plaintiff turned left at an intersection across defendant's approaching automobile at a time when it was unsafe to turn *held* to raise the issue of contributory negligence for the jury, G.S. 20-154, but the testimony in this case *held* not to show contributory negligence on that aspect as a matter of law.

**4. Negligence § 26—**

Nonsuit for contributory negligence is proper only when the evidence, taken in the light most favorable to plaintiff, establishes that defense so clearly that no other reasonable inference is possible.

APPEAL by plaintiff from *Gambill, J.,* June 1964 Regular Civil Session of SURRY. This appeal was docketed in the Supreme Court as Case No. 666 and argued at the Fall Term 1964.

Plaintiff brought this action to recover for personal injuries and property damage which he sustained when his Volkswagen Karmann Ghia collided with defendant's 1962 Pontiac about 11:00 a.m. on October 17, 1963, in the intersection of North Elm Street and Bessemer Avenue in Greensboro.

Plaintiff alleges that the collision was proximately caused by defendant's negligence in that she was traveling at an unlawful rate of speed without having her car under control and without keeping a proper lookout, and in that she failed to yield to plaintiff the right of way to which he was entitled. Defendant denies the material allegations of the complaint and alleges that plaintiff's negligence was the sole cause of the collision in that he made a left turn across her lane of travel without giving a signal and at a time when the turn could not be made in safety. She pleads plaintiff's contributory negligence in bar of his right to recover and also counterclaims for the damage to her automobile.

Plaintiff's evidence tends to show these facts: Plaintiff was traveling north on North Elm Street approaching its intersection with Bessemer Avenue, into which he intended to make a left turn to the west. For 150 feet immediately north and south of the intersection, North Elm Street is 41 feet wide and divided into three lanes. On the south side of the intersection, the westernmost lane is for southbound traffic; the center and easternmost lanes, from which turns may be made from the appropriate lane either to the right or to the left into Bessemer Avenue, are for northbound traffic. On the north side of the intersection the

easternmost lane is for northbound traffic; the other two, for southbound traffic, permit similar right and left turns into Bessemer Avenue. West of the intersection Bessemer Avenue is 25 feet wide. From the intersection looking north, the view is unobstructed for 150-200 feet. The area is a 35 mph speed zone. Before plaintiff reached the intersection, he switched on his left turn signal. Seeing no traffic approaching, he proceeded into the intersection and began his left turn at a speed not in excess of 12 mph. Another vehicle, traveling south on Elm Street, made a left turn immediately in front of plaintiff into East Bessemer Avenue. As plaintiff entered the lane for southbound traffic, he observed defendant's car 150-200 feet away approaching in that lane, according to his testimony, at a speed in excess of 50 mph. He testified:

> "When I realized she was coming so fast I couldn't get completely out of the way, *I put on my brake . . . and she hit me . . .* All of my car was in Bessemer Avenue, all but four feet . . . When I saw her coming, I let it go as fast as I could and I couldn't get out of the way. When she hit me, I grabbed for my boy. I got to the point where she passed me and I knew she was going to hit me. I could feel it. I stopped after that and the back of my car at that point was sticking four feet in the intersection and I had my car in gear and my foot on the accelerator." (Italics ours.)

On cross-examination plaintiff said that he "continued on across that lane of traffic and before he could get four feet of the rear of (his) . . . automobile out of that lane, this lady hit (him) . . . from 150-200 feet back there and she was going 50 mph." The right fender of the Pontiac, hitting the right side of the Karmann Ghia, damaged it "from the door on back to the motor." The Karmann Ghia was knocked round 4-5 feet and came to rest near the southwest corner of the intersection, facing north, in the pedestrian cross-walk and parallel to the Pontiac, which stopped at the point of impact. There were no skid marks behind the Pontiac, which weighed approximately twice as much as the Karmann Ghia. The cars were 4-5 feet apart after the impact, with the debris approximately in front of the Pontiac. The weather was clear, and a motorist traveling north in the lane to plaintiff's right and behind him the length of one or two cars saw defendant's automobile as it came over the knoll about 150 feet away. He also saw plaintiff make a left turn at the time defendant, going south, was coming down the knoll. This witness gave no estimate of defendant's speed, nor was he asked for one. Defendant told plaintiff that "it was probably her fault; that as she approached the intersection she increased her speed to make the green light."

Defendant's motion for nonsuit at the close of plaintiff's evidence was allowed, whereupon defendant took a voluntary nonsuit on her counterclaim. Plaintiff appeals, assigning as error the dismissal of his action as of nonsuit.

*Daniel J. Park for plaintiff.*

*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson by W. F. Maready and J. Robert Elster for defendant.*

SHARP, J.  Plaintiff's evidence, taken in the light most favorable to him, is sufficient to establish these facts: After having ascertained that no vehicle was approaching from the north within the limits of his visibility of 150 feet, with his signal light blinking, plaintiff attempted to make a left turn from the center lane of a 41-foot wide street into an intersecting 25-foot wide street in a 35 mph speed zone. When all but 4 feet of his automobile had cleared the intersection, it was struck on the right rear by defendant's automobile, which stopped at the point of impact.

If the jury should find these to be the facts, plaintiff was already in the intersection, giving the statutory left-turn signal, at a time when defendant was 150 feet away. If so, it was defendant's duty to have delayed her entrance into the intersection until plaintiff had cleared it entirely. G.S. 20-155(b).

The physical evidence belies plaintiff's estimate that defendant approached the intersection at a speed of 50 mph, and makes it without probative value. *Burgess v. Mattox,* 260 N.C. 305, 132 S.E. 2d 577; *Jones v. Schaffer,* 252 N.C. 368, 114 S.E. 2d 105; *Hudson v. Transit Co.,* 250 N.C. 435, 108 S.E. 2d 900. The Pontiac stopped at the point of impact with no skid marks behind it. Although its weight was approximately twice that of the Karmann Ghia, which it hit broadside, it merely turned the lighter car round and knocked it 4-5 feet. These are physical facts which speak louder than plaintiff's testimony. *Carr v. Lee,* 249 N.C. 712, 716, 107 S.E. 2d 544, 547, and show that defendant's speed was less than 50 mph. These same facts, however, give rise, also, to the inference that plaintiff, by the exercise of a proper lookout, could have avoided colliding with any part of the Karmann Ghia, only 4 feet of which remained in the intersection at the time of the impact. "Fractions of a second and a few feet of space may determine the difference between safety and danger in crossing intersecting streets and highways." Higgins, J. in *Wright v. Pegram,* 244 N.C. 45, 47, 92 S.E. 2d 416, 418.

The testimony of the motorist who was traveling in the lane to plaintiff's right tends to show that plaintiff turned left in the intersection in

front of defendant's approaching automobile at a time when it was unsafe to turn. G.S. 20-154; *Wiggins v. Ponder,* 259 N.C. 277, 130 S.E. 2d 402. A portion of plaintiff's own testimony is susceptible to the inference that when he saw defendant approaching, he applied his brakes and attempted to stop in her lane of travel, instead of accelerating in a maximum effort to clear the intersection. Discrepancies and contradictions, even in plaintiff's testimony, are for the jury, not the court. A motion for nonsuit on the ground of contributory negligence may be sustained only when the evidence, taken in the light most favorable to plaintiff, establishes it so clearly that no other reasonable inference is possible. *Fowler v. Atlantic Co.,* 234 N.C. 542, 67 S.E. 2d 496. Issues of defendant's negligence and plaintiff's contributory negligence alike arise upon this evidence. *Lemons v. Vaughn,* 255 N.C. 186, 120 S.E. 2d 527. The case, therefore, should have been submitted to the jury.

Reversed.